

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
~~XXIIIXXXIIISON~~
ATTORNEY GENERAL

Honorable O.J.S. Ellingson
General Manager
Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. 0-1438
Re: Construing Rule 2 of the regulation
governing appointments in the Texas
Prison System: "He must be a citi-
zen of the United States, and must
have maintained legal residence in
the State of Texas for a period of
not less than two years prior to
the date of application."

We are in receipt of your letter of December 6, 1939,
requesting an opinion of this department, which reads as fol-
lows:

"Re: Thomas E. Allison
Marquez, Texas

"The above named is an applicant for a
position as guard or steward with the Texas
Prison System.

"He calls his home Marquez, Texas; however,
he and his family left Texas approximately 15
years ago and have resided in Old Mexico since
that time. Mr. Allison came back to Texas on
September 1st of this year seeking employment
because of economic conditions in Mexico; how-
ever, his family still lives there. He
states during this time he has maintained his
residence at Marquez, Texas; however, he has
not paid his poll tax. He further states he
registered with the American consul in Old
Mexico as an alien, but he did not take out
citizenship papers and did not take interest
in politics in Old Mexico.

"I enclose a copy of our application blank,
and you will note that Rule No. 2 of the Reg-
ulations Governing Appointments in the Texas

Prison System reads as follows:

"'He must be a citizen of the United States, and must have maintained legal residence in the State of Texas for a period of not less than two years prior to the date of application.'

"We would like to know whether Mr. Allison can be considered as having maintained legal residence in the State of Texas for the past two or more years."

The proper answer to the question propounded rests largely upon what is meant by the term "residence," as it is used in your regulations governing appointment in the Texas Prison System. The word "residence" is a very elastic, flexible and relative term, and is difficult to define, as it has no fixed meaning which can be used alike in all cases. Its meaning depends upon the subject matter and connection in which it is used, and the sense in which it should be used is controlled by the reference to the object. 54 Corpus Juris p. 705, Sec. 1. The terms "residence" and "domicile" have been given varied meanings and shades of meanings. In some instances they are construed to be different and in others they are held to be identical, depending upon the apparent sense in which they are employed. It was stated in an opinion by this department, dated September 13, 1933, addressed to Dr. H.Y. Benedict, that "residence as used in this statute (statutes governing resident and non-resident fees charged college students) has the same meaning as domicile." This same ruling was made in conference opinion No. 2977, dated January 10, 1936, Attorney General's Reports 1934-1936, p. 114, directed to Dr. H.Y. Benedict.

The word "domicile" may be substituted, as was done in construing the above mentioned statutes, for the word "residence" in Rule 2 of the regulations governing appointments in the Texas Prison System.

The following rule is set out in 19 Corpus Juris 407, Sec. 19, concerning the effect of absence on one's home or domicile:

"If a person leaves his home or domicile for a temporary purpose with an intention to return, there is no change of domicile."

This rule is further substantiated by the case of Sabriego, et ux vs. White, 30 Tex. 585, in which the court made the following statement:

"No length of absence from one's domicile
when one's purpose is to return to it operates
as a change of domicile."

In 19 Corpus Juris 406, this line of reasoning  is supported
by this statement:

"The original domicile is not changed even
by a long absence if there if any intention of
returning."

In the case of Lumpkin vs. Nicholson, 30 S.W. 568, in
an opinion by the Court of Civil Appeals, in which a writ of
error was denied by the Supreme Court, it was held that there
was some evidence that the object of removal was to obtain
better educational facilities for the children, that the widow
had not entirely given up the intention of returning to Texas,
and that the deceased had stated his intention of reserving
his home there as a "nest egg" for his family, the court here
held that the plaintiff had not abandoned the home.  A person's
legal residence or domicile is governed to a large extent by
his intention.

In the case of Gaar Scott and Company vs. Burge, 110
S.W. 181, it was held that a removal to another state intended
to be temporary and accompanied at all times during the absence
by an intention to return and re-occupy the homestead, will not
defeat a homestead right once enjoyed within the state.

In conference opinion No. 2977, dated January 10, 1936,
Attorney General Reports 1934-1936, p. 11, directed to Dr. H.Y.
Benedict, this question was answered in the following manner:

"What is the residence status, under the
terms of the statute referred to (tuition fee
statute) of students who are minor children
of American citizens who live in Mexico or
some other foreign county?  May these students
be classified as residents of the foreign
country in which their parents are living, or
should these students be classified as resi-
dents of the specific state in which the
parents had legal residence at the time they
moved to the foreign country?  Does the length
of time the parent has lived in the foreign
country have any bearing on the student's
residence classification?

"The residence status under the terms of the
statute referred to of students who are minor

children of American citizens who live in Mex-
ico or some other foreign country is a fact
question determined largely by the intention
of the father of the children. The fact that
they are living in Mexico, in our opinion,
would not prevent them from being classified
as residents of Texas if when they moved to
Mexico their intention was to return and they
did not abandon their intention after the move.
The determination of this question is largely
a matter of fact governed by the intention of
the father of the children. The length of time
the parent has lived in the foreign country
does not have any bearing on the student's res-
idence qualifications."

In answer to your question, we will have to assume cer-
tain facts. If Mr. Allison's sojourn in Mexico was considered
by him temporary, and he at all times had the intention of re-
turning to Texas as his place of residence, we can answer that
under Rule 2 of the regulations he has maintained a legal res-
idence in the State of Texas for a period of two years prior
to this time. However, if Mr. Allison went to Mexico with the
idea of making that his permanent residence, or at any time
during his stay in Mexico he abandoned his intentions of re-
turning to Texas, we must answer that he does not qualify
under Rule 2 of the regulations.

The facts set out in your letter are not sufficient
for us to determine categorically the residence of Mr. Allison;
however, we trust that our discussion will enable you to an-
swer the question you ask.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Frederik B. Isely
    Frederik B. Isely
    Assistant

FBI:jm:wc

APPROVED DEC. 18, 1939
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/RWF Chairman